IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DAVID S. COHEN and AMANDA J. REYES, | : |
| | : |
| Plaintiffs, | : Civil Action No. 2:13-cv-01779-MRH |
| | : |
| v. | : |
| | : JURY TRIAL DEMANDED |
| SCHELL GAMES, LLC, CHRISTOPHER F. ARNOLD | : |
| | : |
| Defendants. | : |
| | : |
| | : |

## FIRST AMENDED COMPLAINT

Plaintiffs David S. Cohen and Amanda J. Reyes, by and through their undersigned counsel, bring this action pursuant to Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1162(2) ("COBRA"), the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"), and Pennsylvania law.

## JURISDICTION AND VENUE

1.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331, 29 U.S.C. § 1161, and 29 U.S.C. § 1132 for the claims brought under ERISA, and the doctrines of pendant and supplemental jurisdiction for the claims under Pennsylvania law.

2.     The United States District Court for the Western District of Pennsylvania has personal jurisdiction over Defendants because Defendants each reside and conduct business within this District.

3.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), inasmuch as Defendants are registered, have offices, conduct business, reside in and can be found in the

Western District of Pennsylvania, and the cause of action set forth herein has arisen and occurred in the Western District of Pennsylvania.

## **PARTIES**

4.      Plaintiff David S. Cohen ("Plaintiff Cohen") is an individual residing at 555 Orchard Avenue, Pittsburgh, Pennsylvania, 15202.  Plaintiff Cohen was employed by Defendant until approximately January 11, 2013, and was a participant within the meaning of ERISA under Defendant Schell Games, LLC's group health plan.

5.      Plaintiff Amanda J. Reyes ("Plaintiff Reyes") is an individual residing at 555 Orchard Avenue, Pittsburgh, Pennsylvania, 15202.  As Plaintiff's Cohen's spouse, Plaintiff Reyes was a beneficiary under Defendant Schell Games, LLC's group health plan.

6.      Defendant Schell Games, LLC ("Schell Games") is a private, for-profit corporation or other legal entity organized under the laws of Pennsylvania.  Schell Games registered an address of 26 Club Rd, Carnegie PA, 15106 with the Department of State for the Commonwealth of Pennsylvania.

7.      Schell Games' headquarters and principal place of business are both located at 2313 E. Carson St., Suite 200, Pittsburgh PA 15203.

8.      At all relevant times, Schell Games was the plan sponsor within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B) of an "employee welfare benefit plan" offered to Schell Games' employees.

9.      Schell Games is a "plan administrator" for the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and a Plan "fiduciary" within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).

10.     Defendant Christopher F. Arnold ("Christopher Arnold") is an agent and employee of Defendant Schell Games, with a business address of 2313 E. Carson St., Suite 200, Pittsburgh, PA 15203.

11.     Christopher Arnold, individually or in his capacity as an agent of Schell Games, is a "plan administrator" for the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and a "fiduciary" of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21).

## FACTUAL ALLEGATIONS

12.     Schell Games is a "design and development company that specializes in creating transformational games and innovative interactive experiences."

13.     Schell Games employs over 100 people.

14.     Schell Games sponsors a health care plan ("the Plan") that is a "group health plan" within the meaning of 29 U.S.C. § 1167(1).

15.     Christopher Arnold and Schell Games, through its agents, exercise discretionary authority and control over the Plan.

16.     Plaintiff Cohen was employed by Schell Games from approximately June 21, 2011 until January 11, 2013.

17.     During his employment with Schell Games, Plaintiff Cohen had the right to elect, and did so elect, healthcare coverage under the Plan.

18.     Plaintiff Reyes, who is Plaintiff Cohen's spouse and a "qualified beneficiary" within the meaning of 29 U.S.C. § 1167(3), also had the right to elect, and did so elect, healthcare coverage under the Plan.

3

19.     At the time of commencement of coverage, a group health plan must provide written notice to each covered employee and spouse of the rights provided under COBRA ("general notice"). 29 U .S.C. § 1166(a)(1).

20.     At the time of commencement of coverage, Defendants did not provide written notice to Plaintiff Cohen or Plaintiff Reyes of their rights under COBRA.

21.     On or about January 11, 2013, Plaintiff Cohen's employment with Schell Games was terminated.

22.     Plaintiff's termination from employment with Schell Games was a "qualifying event" within the meaning of COBRA, 29 U.S.C. §1163(2).

23.     A "qualifying event" entitles a plan participant, or qualified dependent or beneficiary, to receive certain notices under COBRA regarding continuation of health care coverage.  Where a participant or beneficiary is entitled to elect continuation coverage pursuant to COBRA, that individual is entitled to receive a "COBRA Election Notice."

24.     On information and belief, Plaintiff alleges that Human Resources America, Inc. ("HRA") was for a time a third-party administrator of the Plan, and was responsible for distributing the election notice to employees who experienced a qualifying event of which HRA was notified.

25.     On or about January 30, 2013, Plaintiff Cohen received a letter from HRA, promising to provide Plaintiff Cohen with information regarding his rights under COBRA, and how he could elect coverage.

26.     Plaintiff Reyes did not receive any such communication from HRA.

27.     In early May 2013, Plaintiff Cohen contacted HRA to request the promised COBRA information.  A HRA representative explained to Plaintiff Cohen that Schell Games had

terminated its contract with HRA, that Schell Games was no longer using HRA's services as a third-party administrator, and that HRA was no longer involved in providing COBRA notices or information on behalf of the Schell Games-sponsored group health plan.

28.    On May 13, 2013, Plaintiff Cohen emailed Christopher Arnold, an agent and employee of Schell Games, to inquire as to when he would receive COBRA notice and election documents.

29.    On May 13, 2013, Christopher Arnold responded to Plaintiff Cohen, stating that Plaintiff Cohen would receive COBRA notice and election information within 30 days of May 31, 2013.

30.    On June 29, 2013, Plaintiff Cohen received a letter from Christopher Arnold, on Schell Games letterhead and dated June 27, 2013, that generally discussed COBRA rights (the "COBRA Informational Letter").  A true and correct copy of the COBRA Informational Letter is attached hereto as Exhibit A.

31.    The COBRA Informational Letter failed to include any information regarding how or when Plaintiff Cohen could elect COBRA continuation coverage, and failed to include any information regarding the applicable premium for COBRA continuation coverage.

32.    The COBRA Informational Letter also failed to include any information at all regarding how qualifying spouses and/or dependents could elect COBRA continuation coverage.

33.    The COBRA Informational Letter was not addressed to, was not directed to, and made no reference to, Plaintiff Reyes.

34.    Nothing in the COBRA Informational Letter suggests that it was designed in any way to notify Plaintiff Reyes of her rights as a qualified beneficiary under the Plan.

35.    The COBRA Informational Letter did not constitute a COBRA Election Notice.

36.     In fact, the COBRA Informational Letter was simply the "Model General Notice" issued by the Department of Labor, copied and pasted onto Schell Games' letterhead, and distributed to Plaintiff Cohen.

37.     On the Department of Labor's Model General Notice, under the heading "You Must Give Notice of Some Qualifying Events," there is a placeholder for a plan to identify its "plan administrator."

38.     On its COBRA Informational Letter, Schell Games completed the placeholder from the Model General Notice, identifying its "plan administrator" as "Christopher F. Arnold." The COBRA Informational Letter also designated "Christopher F. Arnold" as the individual to whom questions and requests for information should be directed.

39.     Plaintiff Cohen relied on the document's identification of Christopher F. Arnold as the Plan's administrator by continuing to seek information and assistance from Christopher Arnold.

40.     Significantly, on the same website where the Department of Labor makes a Model General Notice available, the Department of Labor explains the different notice requirements under COBRA, details the requirements of a COBRA Election Notice, and provides a model COBRA Election Notice. *See* http://www.dol.gov/ebsa/publications/cobraemployer.html.

41.     Exactly one day after receiving the COBRA Informational Letter, Plaintiff Cohen emailed Christopher Arnold to request the missing information so that Plaintiff Cohen and his family could decide whether to elect COBRA continuation coverage, and how they would go about doing so.  A true and correct copy of Plaintiff Cohen's June 30, 2013 email is attached as Exhibit B.

42.     In that June 30, 2013 email to Christopher Arnold, Plaintiff Cohen explained that he had received the COBRA Informational Letter that included "some of the COBRA information," but noted that "some important information I need that was not included in the packet."

43.     In the same June 30, 2013 email, Plaintiff Cohen further noted that the COBRA Informational Letter failed to address the cost of COBRA coverage, the process for electing coverage, where payments would be sent if elected, the duration of COBRA continuation coverage, and whether Plaintiff Cohen could opt in for some portions but not others.

44.     In the same June 30, 2013 email to Christopher Arnold, Plaintiff Cohen explained that he "would appreciate it if you could provide this information, or let me know if it will be coming in a separate packet, and when I should expect it."

45.     Plaintiff Cohen received no response to his June 30, 2013 email.

46.     On July 11, 2013, Plaintiff Cohen sent a follow-up request for COBRA information to Christopher Arnold.  A true and correct copy of Plaintiff Cohen's July 11, 2013 email is attached as Exhibit C.

47.     Plaintiff Cohen received no response to his July 11, 2013 email.

48.     On July 15, 2013, Plaintiff Cohen sent another follow-up request for COBRA information to Christopher Arnold, explaining that he was "about to do some traveling as part of my job hunt" and that he was "concerned about traveling without any medical insurance." A true and correct copy of Plaintiff Cohen's July 15, 2013 email is attached as Exhibit D.

49.     In the same email, Plaintiff Cohen further explained that his family had "avoided doctors appointments and refilling our prescriptions for nearly two months because we have no way of knowing if we will be able to get cobra."

50.     Plaintiff Cohen received no response to his July 15, 2013 email.

51.     On July 16, 2013, Plaintiff Cohen contacted Arthur Brown, a United States Department of Labor representative, to inquire as to his rights under COBRA and to report Schell Games' failure to provide proper COBRA notice and election information.

52.     On July 17, 2013, Arthur Brown reported that he had attempted to contact Christopher Arnold and Schell Games CEO Jesse Schell, leaving voicemail message for both requesting a return call.

53.     On July 24, 2013, Plaintiff Cohen was notified that not only had his insurance been cancelled, but that he no longer had access to his "flexible spending account" funds.

54.     On July 25, 2013 Arthur Brown reported to Plaintiff Cohen that he had received no response from Schell Games, and that he would be sending a letter to Schell Games reiterating his request to be contacted.

55.     On July 26, 2013, Plaintiff Cohen sent a letter by U.S. Certified Mail to Christopher Arnold, reiterating his request for complete COBRA information, and explaining that his insurance had been canceled.  A true and correct copy of Plaintiff Cohen's July 26, 2013 letter is attached as Exhibit E.

56.     On August 30, 2013—over 60 days after Plaintiff Cohen received the COBRA Informational Letter sent by Christopher Arnold—Plaintiff Cohen received another letter from Christopher Arnold purporting to respond to Plaintiff's July 26, 2013 letter.  A true and correct copy of Christopher Arnold's letter, dated August 16, 2013 but received by Certified Mail on August 30, 2013, is attached as Exhibit F.

57.     The August 30, 2013 letter did not offer to extend or otherwise postpone Plaintiff's period for electing COBRA.

58.   The August 30, 2013 letter was not addressed to, was not directed to, and made no mention of Plaintiff Reyes.

59.   The August 30, 2013 letter did not apprise Plaintiff Reyes of her rights as a qualified beneficiary under the Plan in any respect.

60.   On or about September 4, 2013, Plaintiff Cohen contacted Arthur Brown to explain the August 30, 2013 letter, and Plaintiff Cohen provided a copy of that letter to Arthur Brown.

61.   In response, Arthur Brown made further attempts to contact Schell Games by calling Jesse Schell and Christopher Arnold.  On information and belief, Plaintiff also alleges that Arthur Brown sent a letter to Schell Games via U.S. Certified Mail.

62.   To date, Defendants have never responded to Arthur Brown's inquiries or correspondence regarding the failure to provide Plaintiffs with adequate and timely COBRA notices.

63.   With Arthur Brown's further inquiries receiving no response, Plaintiff Cohen further contacted Schell Games by email on September 25, 2013 in response to Schell Games' August 30, 2013 letter. A true and correct copy of Plaintiff Cohen's September 25, 2013 email is attached as Exhibit G.

64.   In his September 25, 2013 email, Plaintiff Cohen explained that "[i]n the certified letter I received from you this month you provided answers on how to gain COBRA coverage that I asked back in June, but the information is being provided over two months since I originally emailed you the questions, and after my insurance and COBRA coverage was canceled."

65.     Because of the aforementioned deficiencies, Plaintiff Cohen inquired in the same email as to whether Schell Games would extend the COBRA coverage to the present, and whether Schell Games intended to "cover the cost of COBRA for the four months my family was blocked from receiving COBRA coverage (June, July, August, September)."

66.     Plaintiff Cohen also explained in his September 25, 2013 email that he had still "not received the proper documentation from Schell Games in order to obtain COBRA coverage," and reported that he had to sign up for COBRA as soon as possible, because he had "been turned down for private insurance due to a pre-existing condition."

67.     Moreover, in his September 25, 2013 email, Plaintiff Cohen reported that a "gentlemen from the Department of Labor has made several attempts via phone and mail to get in touch with you to provide you with the information on the documents you must provide so I can sign up for COBRA coverage, but he has not received a response."

68.     In his September 25, 2013 email, Plaintiff provided Arthur Brown's contact information to Schell Games, so that Schell Games would "know what forms you need to provide and how the issues that have been caused by not providing the proper information can be resolved."

69.     On September 25, 2013, Schell Games responded by email to Plaintiff, falsely reporting that some crucial information had been provided.

70.     In its September 25, 2013 email, Schell Games falsely stated that it had provided all relevant information in its COBRA Information Letter, and explained that "under this notification you had sixty (60) days from the date of the notification letter to elect to participate in COBRA continuing coverage."

71.     Thus, in the September 25, 2013 email to Plaintiff Cohen, Schell Games attempted to claim that the COBRA Informational Letter constituted a COBRA Election Notice to Plaintiff Cohen, triggering Plaintiff Cohen's 60-day deadline to elect COBRA continuation coverage.

72.     Christopher Arnold then explained that Schell Games would "investigate whether it can under the [sic] extend you [sic] ability to obtain COBRA" and would "let you know whether we are able to extend coverage on or before Friday, September 25, 2013" i.e., the same day.

73.     Christopher Arnold also stated that "[i]f we are permitted to extend coverage, please send written notification of your desire to be included in the COBRA plan as soon as possible."  He also explained that "you required [sic] to make your first payment for continuation coverage in full not later than 45 days after your election."

74.     Plaintiff Cohen responded the same day, and explained that the COBRA Information Letter, and follow-up provided incomplete information.  He also explained that Defendants had failed to provide any response until after the purported election period had expired, preventing Plaintiff Cohen (or his spouse) from electing COBRA continuation coverage. A true and correct copy of Plaintiff Cohen's September 25, 2013 response is attached as Exhibit H.

75.     On the same day, September 25, 2013, Plaintiff Cohen contacted Arthur Brown at the Department of Labor to explain the continued failure by Schell Games to provide COBRA information.  During this call, Arthur Brown attempted to add Jesse Schell and Christopher Arnold to the line.  Neither of them answered their telephone, so Arthur Brown left a voicemail

for Christopher Arnold.  Arthur Brown also asked the Schell Games receptionist to request Jesse Schell's response on an urgent matter.

76.     On October 8, 2013, Christopher Arnold sent an email to Plaintiff Cohen stating "[g]iven the furlough of federal employees, I have not been able to contact Arthur Brown of the Department of Labor."  A true and correct copy of Mr. Arnold's email is attached as Exhibit I.

77.     Arthur Brown's temporary furlough began on October 1, 2013.  Arthur Brown was available for contact all weekdays from July 17, 2013 (the date he initiated contact with Defendants) to October 1, 2013 (the day his furlough began).  He was also available very shortly after October 8.

78.     Neither Christopher Arnold nor any other agent of Schell Games attempted to contact Arthur Brown at the Department of Labor.

79.     On October 14, 2013, Plaintiff Cohen emailed Christopher Arnold.  In his email, Plaintiff Cohen asked for clarification as to what COBRA payments were required to elect COBRA coverage.  A true and correct copy of Plaintiff Cohen's October 14, 2013 email is attached as Exhibit J.

80.     Specifically, Plaintiff Cohen asked whether his COBRA payments would "be for the months [he was] actually able to use the coverage (IE: November), or does payment need to also be made for July, August and September."

81.     Plaintiff Cohen also asked whether Schell Games would "be covering the fees for those months [he] was unable to use [his] insurance or Cobra (July, August, September)." Plaintiff Cohen made this inquiry because he "did not receive the essential information for opting in until the letter with [Shell Games'] response to [his] inquiries arrived on September 1st, and

12

then didn't receive a confirmation that [he] could still elect for Cobra until [Shell Games'] email on October 8th."

82.     In an email reply on October 14, 2013, Christopher Arnold stated that Plaintiff Cohen would "be required to pay for COBRA coverage in each month that coverage is provided" and that "Schell Games will not pay for the costs of COBRA enrollment."  In other words, to enroll in COBRA, Christopher Arnold stated that Plaintiff Cohen would be required to pay his entire premium for the period where he still had not received a COBRA Election Notice, during which time he was uninsured. A true and correct copy of Mr. Arnold's October 14, 2013 email is attached as Exhibit K.

83.     To date, Schell Games has never sent or directed a single piece of correspondence, a notice, an explanation, or any other communication to Plaintiff Reyes regarding her rights as a qualified beneficiary under COBRA.

84.     None of the documents or communications sent to Plaintiff Cohen identified Plaintiff Reyes as a beneficiary, or made any indication that Plaintiff Reyes was entitled to elect continuation coverage.

85.     To date, Schell Games has continued its failure to provide Plaintiff Cohen and Plaintiff Reyes with adequate notice of Plaintiffs' rights under COBRA.

86.     Plaintiffs each have suffered greatly as a result of their inability to elect COBRA coverage.

87.     Because Plaintiff Cohen was unable to elect COBRA within the relevant timeframe, he was forced to apply for alternative health insurance to cover his medical expenses.

88.     Plaintiff Cohen was denied coverage under an alternative private health insurance plan because of a "pre-existing condition," and therefore unable to obtain health insurance.

89.     As a result of being without medical insurance, Plaintiffs have been unable to obtain regular and important physician examinations.

90.     As a result of being without medical insurance, Plaintiffs have been unable to obtain necessary dental care.

91.     As a result of being without medical insurance, Plaintiffs have gone without any medical attention or medication during times of serious illness.

92.     As a result of being without medical insurance, Plaintiff Cohen has gone without medical attention to or medication for a serious dermatological condition.

93.     As a result of being without medical insurance, Plaintiff Reyes has been unable to obtain treatment for ongoing and painful issues with her spine.

94.     As a result of being without medical insurance, Plaintiff Reyes has been unable to obtain necessary prescribed birth control and palliative hormonal medications.

95.     As a result of Defendants' failures to comply with COBRA and ERISA, Plaintiffs lost all access to the "flexible spending account" funds that were previously and otherwise available to Plaintiff.

**COUNT I – Failure to Provide COBRA General Notice 29 U.S.C. Section 1132(c), ERISA §502(c)**
**(Asserted by All Plaintiffs Against All Defendants)**

96.     Plaintiffs incorporates the preceding paragraphs as if set forth fully herein.

97.     At the time of commencement of coverage, a group health plan must provide written notice  to each  covered employee and spouse of the rights provided under COBRA ("COBRA General Notice").  29 U.S.C. § 1166(a)(1).

14

98.     Schell Games and Christopher Arnold, as the employer, plan sponsor and plan administrator of the Plan, were required to notify Plaintiff Cohen with a COBRA General Notice, at the time of commencement of his coverage under the Plan.

99.     Schell Games and Christopher Arnold, as the employer, plan sponsor and plan administrator of the Plan, were required to notify Plaintiff Reyes with a COBRA General Notice, at the time of commencement of her coverage under the Plan.

100.    Schell Games and Christopher Arnold, as the employer, plan sponsor and plan administrator of the Plan, failed to provide the COBRA General Notice to Plaintiffs at the time commencement of their coverage.

101.    Defendants' failure and refusal to provide adequate COBRA notice was knowing, intentional, and made in bad faith.

**WHEREFORE**, Plaintiffs seeks the following relief:

A.      A declaratory judgment that the practices complained of herein are unlawful under COBRA and ERISA;

B.      A judgment in a fair and reasonable amount in favor of Plaintiffs and against Defendants for damages suffered by Plaintiffs;

C.      Statutory penalties against Defendants to the maximum extent authorized by COBRA for each day the COBRA General Notice was not provided;

D.      Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

Such other and further relief as this Court deems just and proper.

**COUNT II – Failure to Provide COBRA Election Notice 29 U.S.C. Section 1132(c), ERISA §502(c)**
**(Asserted by All Plaintiffs Against All Defendants)**

102.    Plaintiffs incorporates the preceding paragraphs as if set forth fully herein.

15

103.   Plaintiff Cohen's termination from employment with Schell Games was a "qualifying event" within the meaning of COBRA, 29 U.S.C. §1163(2), as Plaintiff Cohen was a "covered employee" within the meaning of COBRA.

104.   A "qualifying event" entitles a "covered employee" and a qualified dependent or beneficiary, to receive certain notices under COBRA regarding continuation of health care coverage.

105.   Schell Games and Christopher Arnold, as the employer, plan sponsor and plan administrator of the Plan, were required to notify Plaintiff Cohen of his right to elect to continuation coverage for an 18 month period following the above-referenced qualifying event.

106.   Schell Games and Christopher Arnold, as the employer, plan sponsor and plan administrator of the Plan, were required to notify Plaintiff Reyes separately of her right to elect to continuation coverage for an 18 month period following the above-referenced qualifying event.

107.   Schell Games and Christopher Arnold, as the employer, plan sponsor and plan administrator of the Plan, were required to notify Plaintiff Cohen that he had 60 days from the date of the above-referenced qualifying event to elect COBRA continuation coverage.

108.   Schell Games and Christopher Arnold, as the employer, plan sponsor and plan administrator of the Plan, were required to notify Plaintiff Reyes separately that she had 60 days from the date of the above-referenced qualifying event to elect COBRA continuation coverage.

109.   Schell Games and Christopher Arnold, as the employer, plan sponsor and plan administrator of the Plan, were required to notify Plaintiff Cohen that he had 45 days after the date of the election of continued coverage in which to make the first premium payment.

110.    Schell Games and Christopher Arnold, as the plan sponsor and plan administrator of the Plan, were required to notify Plaintiff Reyes separately that she had 45 days after the date of the election of continued coverage in which to make the first premium payment.

111.    Schell Games and Christopher Arnold, as the plan sponsor and plan administrator of the Plan, were required to set a premium for COBRA continuation coverage at a rate not exceeding 102% of the applicable premium, and to notify Plaintiff Cohen of that premium rate.

112.    Schell Games and Christopher Arnold, as the plan sponsor and plan administrator of the Plan, were required to set a premium for COBRA continuation coverage at a rate not exceeding 102% of the applicable premium, and to notify Plaintiff Reyes separately of that premium rate.

113.    Schell Games, Christopher Arnold, and the Plan have failed to provide any of the timely notices mentioned above, in violation of 29 U.S.C. §§ 1165(1), 1162(3), and 1166(a).

114.    The primary purpose of COBRA's notice requirements is to prevent gaps in healthcare coverage.

115.    As a result of the violations listed above, Plaintiffs experienced a gap in healthcare coverage of over six months.

116.    Plaintiffs were prejudiced by Defendants' failure and refusal to provide adequate COBRA notice.

117.    Defendants' failure and refusal to provide adequate COBRA notice was knowing, intentional, and made in bad faith.

**WHEREFORE**, Plaintiffs seeks the following relief:

E.    A declaratory judgment that the practices complained of herein are unlawful under COBRA and ERISA;

17

F.      A judgment in a fair and reasonable amount in favor of Plaintiffs and against

Defendants for damages suffered by Plaintiffs

G.      Statutory penalties against Defendants to the maximum extent authorized by

COBRA for each day until adequate COBRA Notice is provided;

H.      Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under

the law; and

Such other and further relief as this Court deems just and proper.

**COUNT III – Breach of Fiduciary Duty – ERISA 29 U.S.C. Section 1132(a)(3), ERISA §502(a)(3)**
**(Asserted by All Plaintiffs Against All Defendants)**

118.    The foregoing paragraphs are incorporated by reference.

119.    Defendants Schell Games and Christopher Arnold exercise discretionary authority

and control over the management and administration of the Plan.

120.    Defendants were "plan fiduciaries" within the meaning of ERISA.

121.    As plan fiduciaries, Defendants was required by ERISA to act in the best interests

of plan participants and beneficiaries, to provide timely, complete and accurate disclosures to

participants and beneficiaries, to comply with all applicable provisions of ERISA, and to refrain

from preventing or interfering with the receipt of benefits to which participants and beneficiaries

are entitled.

122.    Defendants breached their fiduciary duties by, *inter alia*, failing to provide Notice

under the COBRA provisions of ERISA; failing to learn and comply with all mandatory aspects

of the Notice requirements of COBRA; failing to retain an adequate third-party administrator for

the purpose of complying with the Notice requirements of COBRA; misrepresenting

communications made to Plaintiff Cohen regarding his COBRA rights; failing to apprise Plaintiff

18

Reyes in any respect of her COBRA rights; and otherwise preventing or interfering with the receipt of benefits to which Plaintiffs are entitled.

**WHEREFORE**, Plaintiffs seeks the following relief:

A.     A declaratory judgment that Defendants are "fiduciaries" within the meaning of ERISA, and that Defendants breached their fiduciary duties with respect to Plaintiffs;

B.     A judgment in a fair and reasonable amount in favor of Plaintiffs and against Defendants for damages suffered by Plaintiffs;

C.     Appropriate equitable relief for damages caused by Defendants' breaches;

D.     Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

Such other and further relief as this Court deems just and proper.

**COUNT IV – Failure to Respond to Information Request - 29 U.S.C. Section 1132(c)(1)(B),
ERISA §502(c)(1)(B)
(Asserted by Plaintiff Cohen Against All Defendants)**

123.     The foregoing paragraphs are incorporated by reference.

124.     Under ERISA, an administrator must comply with a participant's request for any information that the administrator is required to furnish within 30 days.

125.     On May 11, 2013, because no COBRA Election Notice or related information had been sent to Plaintiff Cohen, he requested that information from the Plan administrator.

126.     Plaintiff Cohen received an incomplete response to that request on June 29, 2013.

127.     The very next day, Plaintiff Cohen responded to the Plan administrator, explaining that the June 29, 2013 response was incomplete and lacked critical information.

128.     Plaintiff made several follow-up requests on July 11, 2013; July 15, 2013; and July 26, 2013.  Plaintiff also sought and received the assistance of a Department of Labor representative in obtaining this information.

129.     The Plan administrator did not respond at all to Plaintiff Cohen's request until 111 days later, on August 30, 2013, and even then its response failed to address Plaintiff's questions.

130.     To date, the Plan administrator has failed to provide all relevant information requested by Plaintiff on May 11, 2013.

131.     Pursuant to ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), an administrator who fails or refuses to comply with a request for any information which the administrator is required to furnish under the statute by mailing the material requested within 30 days after such request "may in the court's discretion be personally liable ... in the amount of up to [$110] a day from the date of such failure or refusal" and "the court may in its discretion order such other relief as it deems proper."

132.     The administrator's liability in this regard is in addition to any penalties assessed against the administrator for its failure to provide a COBRA Election Notice.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff seeks the following relief:

A.     A  judgment in his favor and against Defendants;

B.     An Order requiring Defendants to pay Plaintiff Cohen penalties in the amount of $110.00 per day for the period from May 11, 2013 to the present;

C.     Plaintiff's attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g); and Such other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a jury trial as to all claims so triable.


Date:  February 13, 2014                    s/Vincent J. Mersich
—————————————————————————
                                            Vincent James Mersich (PA I.D. No. 310971)
                                            vincent.mersich@mersichlaw.com
                                            Law Office of Vincent J. Mersich, LLC
                                            400 Market Street
                                            Elizabeth, PA 15037
                                            Tel:  (412) 384-8803 / (724) 493-5201
                                            Fax:    412.384.8805

                                            *Counsel for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I, Vincent J. Mersich, hereby certify that I have served a true copy of the foregoing **First Amended Complaint** via the Court's ECF system on this day of February, 2014 upon the following counsel of record:

Melissa McCoy Gormly
Vorys, Slater, Seymour and Pease LLP
790 Holiday Drive – 3rd Floor
Pittsburgh, PA 15220
mmgormly@vorys.com

/s/ Vincent J. Mersich